**IN THE COURT OF APPEALS OF IOWA**

No. 24-1811
Filed February 19, 2025

**IN THE INTEREST OF J.L.,**
**Minor Child,**

**S.W., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.

A mother appeals the termination of her parental rights to her son.
**AFFIRMED**.

Audra F. Saunders, West Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Mark D. Reed of Marberry Law Firm, P.C., Urbandale, attorney and guardian ad litem for minor child.

Considered by Greer, P.J., and Langholz and Sandy, JJ.

**LANGHOLZ, Judge.**

A son and his parents[1] came to the attention of the Iowa Department of Health and Human Services ("HHS") when the mother was found passed out from intoxication in her room at a domestic-violence shelter, and the then-three-year-old son was found wandering unsupervised outside of their room. The son was eventually removed from his mother's care. By the termination hearing, there were still serious concerns about the mother's substance use and her failure to fully participate in mental-health therapy.

So the juvenile court terminated the mother's parental rights.[2] And the mother appeals, arguing that termination is not in the son's best interest and that the permissive parent–child bond exception should apply.

But we agree with the juvenile court that termination of the mother's parental rights is in the son's best interest. She has not made progress towards unsupervised visits, still struggles with substance use, and has not fully utilized mental-health services. And the son is much improved in his foster-care placement and is finally experiencing a stable home environment. We also agree that the parent–child bond exception should not apply because the mother has not met her burden to prove that termination would be more detrimental to the son than the uncertain status quo. We thus affirm the juvenile court's termination of the mother's parental rights.

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public. *Compare* Iowa Code § 232.147(2) (2024), *with id.* §§ 602.4301(2), 602.5110.

[2] The juvenile court also terminated the father's parental rights. But he does not appeal. So we focus on the mother.

## I.     Background Facts and Proceedings

In January 2023, police were called to a domestic-violence shelter where the mother and son were living.  The mother was found unconscious after drinking a pint of vodka and then taking medication.  The son was found wandering around unsupervised.  Later that month, the mother began voluntary services with HHS. The son's father was in jail.

In February, the son was placed with his grandmother—apparently under a safety plan.  The mother reported to HHS that she was attending substance-use treatment and would be starting mental-health treatment soon.  And the mother also reported that the only substance she struggled with was alcohol.  Under his grandmother's care, the son had his first medical check-up in almost three years, where he was referred to therapy for an expressive speech delay.

In the spring, the mother regressed with her substance use.  At first, she was compliant with treatment—meeting with her provider, consistently taking her medication, and submitting random urine tests.  But in May, the mother tested positive for cocaine and cocaine metabolite.  So the son was removed from the mother's custody and placed in foster care.  During a physical exam conducted after removal, the son tested positive for methamphetamine, cocaine, benzoylec, methadone, and fentanyl.

The son was adjudicated in need of assistance in June.  Though the mother continued to engage with substance-use treatment, she revoked her release of information to HHS in August.  Later that month, the son was placed with his

current foster family.[3]  Some point later, the mother signed a new release for her treatment provider to share her information with HHS.

In November, the mother tested positive for cocaine and cocaine metabolite.  And in February 2024, she tested positive for the same plus THC.  A permanency hearing was held over three days in May and June.  The court found that the mother had not fully addressed her substance-use or mental-health issues. It also noted that the mother had "been closed off and somewhat secretive," as she would not talk about the status of her relationship with the father or provide her address to HHS.  The mother had also ignored the physical therapy referral for the son.  And so, the court ordered the State to file a termination petition.

In August, the mother was pulled over while driving with the father, who had a warrant out for his arrest for violating his probation.  He was also under investigation for distributing fentanyl.  The father was arrested, and the police executed a search warrant at the mother's home as they had observed he had been living with her.  The officers found thirty-eight fentanyl pills.  At the termination hearing, the mother denied that the father had been living with her and said that she did not know that there was fentanyl in the apartment.

During this time, the mother was still participating in substance-use services and meeting monthly with a substance-use counselor.  She had also enrolled in mental-health therapy.  Yet the mother tested positive for methamphetamine and cocaine in July.  Indeed, the mother's substance use precluded any unsupervised

---

[3] Between May and August, the son was shuffled between placements.  After removal, he was placed with a foster family.  Soon thereafter, he was placed with a relative.  But that relative left town in August without telling HHS.  So the son was then placed with his current foster family.

visits with the son throughout the proceedings. Shortly before the September termination hearing, the mother tested negative for all substances.

After the hearing, where the son's guardian ad litem also supported termination, the juvenile court terminated the mother's parental rights. In a detailed decision, the court found that the State proved by clear and convincing evidence that termination was warranted under Iowa Code section 232.116(1)(f) (2024). The court also concluded that termination is in the son's best interest and denied the mother's request for six more months to work toward reunification. It found the mother "denies ongoing drug use or the need for more treatment" and "has minimally engaged in needed mental health care." The court emphasized that the mother "doesn't see a need for further change" and reasoned that "[t]here is no reason to think that [the mother] will be able to provide [the son] with [a predictable] plan in the near future" because she does not see the need for change. And the court found no permissive exception to termination applied. The mother appeals.

## II.   Best Interest of the Child

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the best interest of the child. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The mother does not challenge the statutory ground and instead jumps right to the second step—whether termination is in the son's best interest.[4] The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the son's long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must give "primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re M.W.*, 876 N.W.2d 212, 224 (Iowa 2016).

The mother argues termination of her parental rights is not in the best interest of the son because "maintaining the parent-child relationship between Mother and the child does not in any way jeopardize the child's safety." In support, she points to her progress with her substance use, that she has secured employment and housing, and her appropriate interactions with the son during visitation. But on our de novo review, we agree with the juvenile court that termination is in the son's best interest.

The mother has failed to show how she can support the son's future and immediate best interests. The son had been out of his mother's custody for over eighteen months at the time of the termination hearing. While the mother did take advantage of her visitation, her visits never moved past the fully supervised level. And she has not been able to move beyond supervised visits because of persisting

---

[4] In her argument on this issue to us, the mother makes a stray reference to a six-month extension to work toward reunification. But because she does not separately raise this issue and flesh it out with any argument, we do not consider its merits.

safety issues. So too is the mother's substance use a continued concern. While she tested negative shortly before the hearing, she has had positive drug tests throughout these proceedings, including testing positive for methamphetamine and cocaine just two months before the hearing. And while the mother is engaged in some treatment, HHS reported concerns about her ability to "honestly address her substance use," as she has blamed workers for positive drug tests and making up false information about her. She has also failed to use mental-health services until recently, after the juvenile court directed the State to proceed with termination.

Meanwhile, the son is doing well in his foster-care placement. The guardian ad litem reported most recently that he has started at a new school and is adjusting well. And "[w]ith the change in routine, [the son] has greatly benefited" from getting to spend more quality time with the foster family and having more structured days. As the district court noted, "[the son] needs to have a predictable plan" but the mother cannot provide that for him as she is "not genuinely committed to change." Considering all this, we agree that termination of the mother's parental rights is in the son's best interest.

### III. Parent–Child Bond Exception

The mother also argues that the court should have declined to terminate her rights because it "would be detrimental to the [son] due to the closeness of the child's bond with Mother." *See* Iowa Code § 232.116(3)(c). This exception is permissive, so even if the mother and the son have a close relationship, a court may still order termination when doing so would serve the child's best interest. *See In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018). And we agree with the juvenile court that there is not "clear and convincing evidence that termination would be more

detrimental to [the son]" because of the bond he shares with his mother "than continued uncertainty" in his home life.

The mother has not made the needed changes required to be a better parent to her son. She has not addressed her substance-use or mental-health issues sufficiently so that the son would be safe in her care. And the son is doing well in his foster-care placement. So the mother has not proved that her bond with the son should preclude termination of her parental rights. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent's] inability to provide for [the child's] developing needs."). We thus affirm the juvenile court's rejection of this exception.

We do not doubt that the mother loves her son. But it is in the son's physical, mental, and emotional best interest to terminate her parental rights now. We thus affirm the juvenile court's termination of the mother's parental rights.

**AFFIRMED**.